E-FILED
Friday, 08 May, 2020  11:58:13 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cr-30051 |
| | ) | |
| ROGER E. PACE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Roger E. Pace's Motion to Suppress Evidence (d/e 16) (Motion). The Motion was referred to this Court for a Report and Recommendation. Text Order entered December 9, 2019.  After careful review of the evidence and the submissions of the parties, this Court recommends that the Motion should be DENIED.

## BACKGROUND

On September 4, 2019, a Grand Jury indicted Pace on a charge that he knowingly and intentionally possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  Indictment (d/e 1).  On April 5, 2019,

officers arrested Pace in Pleasant Hill, located in Pike County, Illinois, when officers found methamphetamine and cannabis in the vehicle Pace was driving. On December 4, 2019, Pace filed the Motion. On March 12, 2020, the Court held a hearing on the Motion (Hearing). Pace appeared in person and with his attorney Assistant Federal Public Defender Johanes Maliza. The Government appeared by Assistant United States Attorneys Crystal Correa and Patrick Hansen. A transcript of the hearing was prepared, and the parties have submitted their post-hearing memoranda. The matter is ready for this Court's Report and Recommendation.

<u>STATEMENT OF FACTS</u>

On the evening of Friday April 5, 2019, at approximately 10:30 p.m., Pleasant Hill Police Officer Ryan Crowder was on patrol in an unmarked car in Pleasant Hill, Illinois. Officer Crowder was in uniform. Officer Crowder was the only officer on duty in Pleasant Hill at that time. Officer Crowder was a canine officer. He had his drug sniffing dog (Canine) with him on patrol. <u>Transcript of Proceedings at the March 12, 2020 Hearing (d/e 25) (T.)</u>, at 17-18. Officer Crowder's vehicle was equipped with a dash camera. The recording included audio from inside the vehicle but did not include audio recordings from events that occurred outside the vehicle. A copy of the dash camera recording was admitted into evidence at the

Hearing. The dash camera recording included a date and time stamp. The times set forth in this Report and Recommendation are from the date and time stamp of the recording. See T. 20-21. The Court's statement of facts comes from a review of the dash camera audiovisual recording and the testimony of Officer Crowder, the only witness at the hearing.

At approximately 10:36 p.m., on April 5, 2019, Officer Crowder observed Pace's white SUV parked on the parking lot of Craig's Heavy Duty Towing Service (Craig's) in Pleasant Hill. Craig's was closed at that time. T. 19, 50. Pleasant Hill's Police Commissioner Craig Robinson owned Craig's, including the parking lot. Police Commissioner Robinson asked the Pleasant Hill Police Chief to have Pleasant Hill Officers watch out for persons loitering on the Craig's parking lot, especially after hours. T. at 11-12. Officer Crowder had some initial suspicion about the SUV because he did not recognize the SUV, the SUV was alone on the parking lot, and all the businesses in the area were closed. T. 51. The area was lit by the streetlight across the street from where the SUV was parked on the lot. T.53.

At 10:36:53 p.m., Officer Crowder pulled up on the driver's side of the SUV. Pace exited the SUV and walked toward Officer Crowder's vehicle. T. 76. Pace asked for directions to Carolina Street. Officer Crowder asked

Pace who he was looking for.  Pace said he was going to see Jennifer
Johns.  Pace asked Officer Crowder:  "Where Carolina Street is".  Officer
Crowder said, "It's over there" and motioned in the direction of Carolina
Street.  Pace said he was going to visit Jennifer Johns and her mother.
Officer Crowder was familiar with Jennifer Johns.  T. 23-24.

The mention of Johns and her mother Shelley Johnston raised a red
flag with Officer Crowder.  T. 24.  Officer Crowder knew Jennifer Johns.
They went to the same babysitter as children.  T. 13.  After Crowder
became a Pleasant Hill Police Officer, he observed Johns one time when
she appeared to be high on methamphetamine.  She had rapid eye
movement, she could not sit still, and she kept taking off and putting on her
shoes. T. 13.  In February 2019, Johns gave Officer Crowder information
about methamphetamine use in Pleasant Hill.  Her information led to an
arrest of a person for possession of methamphetamine. T. 14. Officer
Crowder learned from the West Central Illinois Task Force (Task force), a
law enforcement task force focused on drug trafficking interdiction) that a
confidential source reported that Johns and her mother Johnston were
using and moving methamphetamine.  T. 74.  Officer Crowder also knew
that the Pleasant Hill Police Office had received complaints from
Johnston's neighbors about frequent traffic at Johnston's home on Carolina

Street.  The neighbors complained that cars regularly drove up to Johnston's home.  Each time, the occupants of the car stayed in the car; an individual came out of Johnston's home, went out to the car, interacted briefly with the occupants, and went back to the house; and the car then left.  Officer Crowder knew that this type of traffic at a residence was consistent with drug trafficking.  T. 14-16.  Officer Crowder, therefore, was concerned because Pace was in Pleasant Hill late in the evening and planned to visit Johns and Johnston, individuals known to be involved in methamphetamine drug activity.  T. 24, 72.

After the initial conversation with Pace, Officer Crowder backed up his vehicle and parked directly behind Pace's vehicle.  At 10:37:49 p.m., Officer Crowder turned on his flashing emergency lights.  Officer Crowder typically turned on his emergency lights when he parked and interacted with someone he did not know.  Officer Crowder was the only officer on duty.  He did not know if Pace was armed.  He turned on the lights so that if a unit from another agency, such as the Pike County Sheriff's Office or the Illinois State Police, needed to respond to his location, the location would be easier to find.  T. 26-27.  Officer Crowder had not told Pace he could not leave (T. 25), and he did not display a weapon (T. 33, 41).  His conversation with Pace was cordial.  T. 72.  Officer Crowder did not shout

at Pace. T. 41. At the time that Officer Crowder turned on his emergency lights, Pace stood outside the SUV talking on a cell phone. Officer Crowder testified that if Pace had left, Officer Crowder would not have stopped him. T. 26. At approximately 10:39:04 p.m., Officer Crowder called Dispatch to check the license plate number on the SUV. T. 30.

At 10:38:30 p.m., Officer Crowder exited his vehicle and walked up to Pace next to the SUV. The recording does not indicate that Dispatch had responded with any information on the SUV license plate yet. Pace was still standing outside the SUV. Officer Crowder asked Pace for his driver's license. Pace retrieved his license from the SUV. T. 60. Officer Crowder also shined a flashlight into the interior of the SUV. Officer Crowder was looking for weapons or contraband. T. 28-29. Officer Crowder saw several cases for guitars and other musical instruments but did not see any weapons or contraband. T. 31-32. Pace told Officer Crowder that the cases contained musical instruments. T. 61.

At approximately 10:39:30 p.m., Pace handed Officer Crowder his license. Officer Crowder attempted several times to use his portable radio to call Pace's driver's license number into Dispatch but was unsuccessful. The portable radio often did not work well in that part of Pleasant Hill.

Officer Crowder wanted to call in Pace's driver's license number to see if the license was valid and to check for outstanding warrants.  T. 28-30.

At approximately 10:40:20 p.m., while Officer Crowder stood outside the SUV, Pace walked to the back of the SUV and appeared to be trying to open the back window of the SUV.  Pace said he wanted to get an instrument out of the back of the SUV and play it for Officer Crowder. Officer Crowder moved to the back of the SUV next to Pace.  At 10:40:26 p.m., Pace removed an instrument case from the rear of the SUV.  Officer Crowder told Pace that he was sure Pace could play well, but asked Pace to leave the case in the SUV.  Officer Crowder gave this instruction for officer safety because he did not know what was in the instrument case. Officer Crowder found Pace's overly friendly manner to be unusual.  T. 31-32.  Officer Crowder also observed Pace to be more nervous than people with whom Officer Crowder typically interacted.  T. 51.  By 10:40:50 p.m., Pace returned to the driver's seat in the SUV.  The door was open, and Officer Crowder was standing next to Pace.

At 10:41:54 p.m., Officer Crowder returned to his vehicle.  Pace remained seated in the SUV with the driver's door open.   At approximately 10:42:02 p.m., Officer Crowder sat in his vehicle and shut the door.

At approximately 10:42:27 p.m., Officer Crowder contacted Dispatch to ask for a check on Pace's driver's license number. Officer Crowder asked for Dispatch to run a criminal history on Pace in addition to driver's license status. At 10:44:00 p.m., Dispatch gave Officer Crowder information on the SUV's license plate. The plate was valid. Dispatch provided no suspicious information regarding the SUV license plate. T. 60. At approximately 10:44:30 p.m., Pace shut the driver's car door on the SUV. T. 34. At approximately 10:45:15 p.m., Officer Crowder spoke to a Pike County Deputy Sheriff. Officer Crowder told him he was on a stop with a guy from Grafton, Illinois, and was waiting for information to come back. Officer Crowder repeated that the person was from Grafton, Illinois, and was in the area to see Jennifer Johns. Grafton is approximately 50 miles south of Pleasant Hill. Officer Crowder said that if the Deputy Sheriff was in the vicinity to "come and have some fun, but if not no big deal." The Deputy Sheriff was busy on a call and declined to join Officer Crowder at the scene. Officer Crowder told the Deputy Sheriff that he intended to ask Pace for consent to search the SUV.

At approximately 10:46:00 p.m., Dispatch told Officer Crowder that Pace had a criminal history that included possession of methamphetamine, possession of a narcotic instrument, and possession of drug paraphernalia.

Pace had no outstanding warrants. Officer Crowder also used an in-car computer to look up Pace on the website Judici.com. The Judici.com website collected criminal docket information from certain counties and other jurisdictions in the region. The Judici.com website stated that Pace was on probation for unlawful possession of methamphetamine. T. 38, 71. The Judici.com website also contained a disclaimer that stated, "We don't warrant any accuracy for our statements." T. 64.

At 10:46:40 p.m., Officer Crowder exited his vehicle and walked to the driver's side door of the SUV. Officer Crowder opened the SUV door and Pace exited. Pace was smoking a cigarette. The two men talked in what appeared from the video to be a normal conversational manner. At some point in the encounter, when conversing with Pace, Officer Crowder observed a huge bulge in Pace's front pocket while they were talking. T. 77. The bulge was cash. Pace removed the cash from his flannel jacket. T. 67. Pace had $800 in cash in his pocket. T. 68.[1] Officer Crowder asked Pace if he could check Pace for a weapon. Pace consented to a search for weapons. At approximately 10:47:53 p.m., Officer Crowder patted Pace

---

[1] The actions of the two men recorded on the video indicate to the Court that the disclosure of the $800 in cash occurred at this time. The testimony was unclear exactly when Officer Crowder noticed the bulge in Pace's coat. This could have occurred during the pat down for weapons.

down.  At 10:48:07p.m, Officer Crowder had Pace walk over to the area in front of Officer Crowder's vehicle.

At 10:49:35 p.m., Officer Crowder had Pace walk closer to the front of Officer Crowder's vehicle.  Officer Crowder had Pace take off his jacket.  Officer Crowder checked Paces jacket.  Officer Crowder pulled the cash out of the jacket pocket and then returned the money to the pocket.  Officer Crowder had Pace pull up his shirt and shake out the waistband of Pace's shorts to establish that he had no weapons.  Pace was still smoking a cigarette, and the two men continued to talk to each other in what appeared to be a normal conversational manner.

At approximately 10:52:00 p.m., Officer Crowder asked Pace for permission to search Pace's vehicle.  Pace declined. T. 42.  Officer Crowder told Pace that he was going to conduct a free air sniff with his Canine.[2]  See T. 42.  At 10:52:15 p.m., Officer Crowder reached for his handcuffs.  Officer Crowder told Pace that he was going to handcuff Pace for officer safety while he conducted the free air sniff.   T. 51.  At approximately 10:52:44 p.m., Officer Crowder handcuffed Pace with Pace's hands in front of Pace's body.  Officer Crowder draped Pace's jacket over

---

[2] It is unclear exactly when Officer Crowder asked for permission to search, Pace declined, and Officer Crowder informed Pace he would conduct a free air sniff.  The conversation happened between 10:46:40 p.m. when Pace exited his vehicle and 10:52:15 p.m., when Officer Crowder reached for his handcuffs.

Pace's shoulders.  Pace and Officer Crowder walked back to the SUV and then back to the front of Officer Crowder's vehicle.  T. 45.  Pace sat on the front of the vehicle facing the SUV.  Pace told Officer Crowder that cannabis had been in the car the day before.   T. 42-44.[3]

At 10:54:03 p.m., Officer Crowder walked his Canine over to the SUV.  At 10:54:44 p.m., approximately 18 to 19 minutes after the encounter began, the Canine alerted on Pace's vehicle.  At 10:55:04 p.m., Officer Crowder put his Canine back into his vehicle.  Officer Crowder told Pace he was going to search the SUV.  At 10:56:05 p.m., Officer Crowder started to search the SUV.  Officer Crowder found cannabis and methamphetamine in Pace's vehicle.  T. 47.  Pace was arrested.

<u>ARGUMENTS OF THE PARTIES</u>

Pace moves to suppress the drugs and other evidence found during this search as well as any statement he made during the encounter and after his arrest.  Pace argues that Office Crowder detained him without reasonable suspicion based on articulable facts when Officer Crowder turned on his emergency lights, and Officer Crowder arrested Pace without probable cause when he handcuffed Pace.  The Government argues that

---

[3] It is unclear exactly when Pace made this statement, except he made the statement after Officer Crowder stated that he was going to conduct a free air sniff of the SUV with his Canine and before Officer Crowder conducted the free air sniff.

Pace and Officer Crowder engaged in a consensual encounter until Pace declined to give permission to search the SUV.  The Government argues that Officer Crowder then conducted an investigative stop based on reasonable suspicion based on articulable facts.  The Government argues that subsequent search of the SUV was proper because the alert by the Canine provided probable cause to search.

## ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. Amend. IV.  Not all encounters between law enforcement officers and individuals constitute a search or seizure.  Officers may approach individuals and engage in consensual questioning and conversation.  See United States v. Sheets, 188 F.3d 829, 836 (7th Cir. 1999).  Officers may also detain a person for the purpose of investigating whether a crime has occurred or is occurring.  In order to detain a person to conduct such an investigative stop, the officer must have reasonable suspicion based on articulable facts that criminal activity may be afoot.  Terry v. Ohio, 392 U.S. 1, 21-22 (1969).  Officers should use "the least intrusive means available" during a brief investigative stop "to verify or dispel their suspicion."  United States v. Tilmon, 19 F.3d 1221, 1225 (7th Cir. 1994).  "Reasonable suspicion is an objective standard, considering

the totality of the circumstances." United States v. Lewis, 920 F.3d 483,
493 (7th Cir. 2019).   Finally, officers may arrest a person based on
probable cause that the person committed a crime.  See United States v.
Johnson, 910 F.2d 1506, 1508 (7th Cir. 1990).

An officer may learn information during a consensual encounter that
presents the officer with articulable facts that provide the officer with
reasonable suspicion.  The officer may then conduct an investigative stop.
The facts adduced at the investigative stop may reveal facts that establish
probable cause to justify a search or arrest.  See e.g., United States v.
Lickers, 928 F.3d 609, 616-17 (7th Cir. 2019) .  The events on April 5, 2019
between Officer Crowder and Pace were just such a situation.

Officer Crowder's initial encounter with Pace was consensual.  An
interaction with an officer is consensual when the individual reasonably
would "feel free to ignore the police and go about his business."  United
States v. Holly, 940 F.3d 995, 1000 (7th Cir. 2019).  In determining whether
an encounter is consensual, the Court considers several factors, including
but not limited to the following:

- where the interaction took place, including whether it was in public;

- how many police officers were present;

- the extent to which the police presence was threatening;

Page **13** of **26**

• whether the officers made any show of weapons or physical force;

• the officers' language and tone;

• whether the police suggested the defendant was suspected of crime; and

• whether officers told the defendant he was free to leave.

Id.

In this case, Officer Crowder was alone.  Pace was parked.  Officer Crowder did not pull Pace over or otherwise force Pace to stop.   Officer Crowder pulled up next to the SUV because Pace was parked on private property and the owner had asked for the police to keep people from loitering on his property after hours.  Pace exited the SUV voluntarily and asked Officer Crowder for directions.  Officer Crowder did not threaten Pace or order him to do anything.  Officer Crowder did not draw his weapon or raise his voice.  The encounter was clearly consensual.  See also United States v. Lickers, 928 F.3d at 616 (A consensual encounter occurred when a police officer approached the driver of a car parked in an unusual location and asked for his driver's license.).

Pace argues that the initial encounter was non-consensual.  Post-Hearing Memorandum in Support of Motion to Suppress (d/e 26) ( Pace Memorandum), at 2-3; Defendant's Reply to the Government's Brief in

Opposition of Defendant's Motion to Suppress Evidence (#27) (d/e 28) (Reply), at 1-4.  The Court disagrees.  The factors listed above from Holly show the initial interaction was consensual.  Pace's counsel asked Officer Crowder hypothetical questions about what if Pace refused to talk to Officer Crowder.  Those hypothetical situations did not occur.  Officer Crowder did not ask Pace anything initially.  Pace opened the SUV door and approached Officer Crowder's vehicle; Pace asked Officer Crowder a question.  Pace's hypothetical questions do not reveal whether Officer Crowder forced Pace to do anything or whether Pace felt that he was free to leave.  Pace asked for assistance in the form of directions to Carolina Street.  This initial encounter when Officer Crowder pulled along the side of the SUV was clearly consensual and not a stop or detention of any kind. Pace's arguments to the contrary are not persuasive.

Next, Officer Crowder parked directly behind the SUV and turned on his emergency lights.  Officer Crowder turned the lights on for officer safety. He did not know Pace and did not know if he had weapons "on him".  He did not know what would happen.  He knew he was the only Pleasant Hill officer on duty, and he knew that his only back-up would be from out of town, either Pike County Sheriff's Deputies or Illinois State Police Troopers. The lights would enable such officers to find him more easily.  T. 26-27.

Pace argues that Officer Crowder's testimony on this point was not credible.  See Pace Memorandum, at 9.  The Court disagrees.  The Court finds Officer Crowder to be credible.  Officer Crowder was the only officer on duty in Pleasant Hill.  Any back-up would have come from officers who did not regularly patrol Pleasant Hill.  The emergency lights would have assisted them in finding his location more quickly.

Pace argues that regardless of Officer Crowder's motives, he seized Pace when he turned on the emergency lights.  Pace Memorandum, at 3. Again, non-consensual encounters usually involve a show of force.  None of that occurred here.  Officer Crowder turned on the emergency lights for officer safety.  The Seventh Circuit has held in a very similar situation that turning on emergency lights without any other show of force does not constitute a seizure.  United States v. Clements, 522 F.3d 790, 794-95 (7th Cir. 2008).  In Clements, the officers pulled up behind a parked car, much as Officer Crowder pulled behind the SUV.  The officers in Clements turned on their emergency lights for identification and officer safely.  Id.  Here, Officer Crowder had already identified himself.  He turned the lights on for officer safety as the officers in Clements had.  Like the officers in Clements, turning on the emergency lights alone did not convert a consensual situation into an investigative stop.

Pace argues that a person would have concluded under these circumstances that he was not free to go when Officer Crowder parked behind the SUV and turned on his emergency lights. A seizure occurs when a person reasonably believes under all the circumstances that he is not free to go. See Hall v. City of Chicago, 953 F.3d 945, 951 (7th Cir. 2020). The question of whether a person is seized is a factual issue to be determined by the totality of the circumstances. In this case, it was 10:30 p.m. in a small town with no businesses open; Pace had parked the SUV on private property; Officer Crowder pulled next to the SUV; and Pace exited the SUV and asked for directions. After this conversation, Officer Crowder parked behind the SUV and turned on his emergency lights. Pace continued to stand outside the SUV talking on the phone. Officer Crowder did not threaten Pace, did not display a weapon or make a show of force, did not raise his voice, and did not tell Pace that he was not free to leave. See Holly, 940 F.3d at 1000. The video shows that Pace was talking on the phone and seemed oblivious to what Officer Crowder was doing.

The sight of emergency lights generally alert drivers in moving vehicles to yield the right of way to officers. The lights in this sense show an assertion of authority. Here, neither vehicle was moving. Still, a person

might view lit emergency lights as an assertion of authority indicating that he was not free to leave.   The Seventh Circuit, however held in Clements that turning on emergency lights alone was not enough to constitute a seizure of a parked car.  The factors listed in Holly also weigh in favor of finding the encounter was consensual.  In light of the Clements and Holly decisions, the Court finds that Officer Crowder did not seize Pace when he turned on his emergency lights.

Even if Officer Crowder initiated an investigative stop when he turned on the emergency lights, the Court finds that he had reasonable articulable suspicion to conduct a limited investigative stop to check Pace's driver's license.  Reasonable articulable suspicion is "something less than probable cause but more than a hunch." United States v. Baskin, 401 F.3d 788, 791 (7th Cir. 2005):

> Reasonable suspicion is not an onerous standard: Reasonable suspicion requires "considerably less" than a preponderance of the evidence and "obviously less" than probable cause to effect an arrest. United States v. Esquivel– Rios, 725 F.3d 1231, 1236 (10th Cir. 2013). "To satisfy the reasonable suspicion standard, an officer need not 'rule out the possibility of innocent conduct,' or even have evidence suggesting 'a fair probability' of criminal activity." Id. (quoting Poolaw v. Marcantel, 565 F.3d 721, 736 (10th Cir. 2009)). Indeed, we have held that factors consistent with innocent travel may contribute to reasonable suspicion. United States v. Valles, 292 F.3d 678, 680 (10th Cir. 2002).  As long as an officer has "a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely

than not that the individual is not involved in any illegality."
United States v. Johnson, 364 F.3d 1185, 1194 (10th Cir. 2004).

United States v. Petit, 785 F.3d 1374, 1379-80 (10th Cir. 2015) (emphasis in the original) (cited with approval in United States v. Sanford, 806 F.3d 954, 959 (7th Cir. 2015)). In this case, Officer Crowder knew Pace was from out of town because he needed directions to Carolina Street. He knew Pace was going to see Johns and Johnston. Officer Crowder knew that Johns was involved with methamphetamine. Johns had given information that led to an arrest for possession of methamphetamine. Officer Crowder knew that the Task Force had information that indicated Johns and Johnston were moving methamphetamine. Officer Crowder knew that the neighbors complained of traffic at Johnston's house consistent with drug trafficking. He also knew that Pace was going to meet Johnston, not just Johns. The Court finds that this is enough information to take the limited investigative step to check Pace's identification. Asking a person for his driver's license is a very limited intrusion that generally is not a seizure. See Lickers, 928 F.3d at 616. By stopping Pace and asking for his driver's license, Officer Crowder used the least intrusive means reasonably available to verify or dispel his suspicions in a short period of time. See Tilmon, 19 F.3d at 1225. Thus, even if Officer Crowder initiated an investigative stop, Officer Crowder had reasonable suspicion

Page **19** of **26**

based on articulable facts to stop Pace for the limited purpose of checking his identification.

Pace argues that Officer Crowder did not have information on which to believe that Johns and Johnston were involved with methamphetamine. See Pace Memorandum, at 11-12.  The Court again disagrees.  Officer Crowder knew that Johns was involved in methamphetamine.  He observed her high on meth.  She gave information that led to the arrest of a person for possession of methamphetamine.  The Task Force had information which indicated Johns and Johnston were moving methamphetamine.  The neighbors complained about traffic at the Johnston house consistent with drug trafficking.  Officer Crowder had ample information on which to conclude that Johns and Johnston were distributing methamphetamine. Pace's arguments to the contrary are not persuasive.

Officer Crowder then asked to see Pace's driver's license and unsuccessfully tried to call Dispatch on his portable radio to have the license checked.  Again, asking to see a person's driver's license is not a seizure.  During this part of the encounter, Pace acted unusually friendly and unusually nervous.  He attempted to retrieve a musical instrument from the back of the SUV to play for the officer.  This is highly unusual behavior

for a person talking to a police officer at 10:30 p.m. in the middle of a small town on an empty parking lot.

Pace argues that Officer Crowder had no way of knowing whether this behavior was normal for Pace. He may have been a friendly person who loved to play music for strangers. See Pace Memorandum, at 10-11. The relevant standard for Officer Crowder's actions, however, is an objective one based on the totality of the circumstances. See Lewis, 920 F.3d 483, 493. The standard is not based on determining Pace's individual norm for his behavior. Pace engaged in highly unusual behavior when he tried to remove a musical instrument from the back of the SUV at 10:45 p.m. on a deserted parking lot in the middle of a small town. This behavior recorded on the dash camera video corroborates Officer Crowder's testimony that Pace acted unusually friendly. The unusual behavior also adds credence to Officer Crowder's testimony that Pace was unusually nervous.

Pace also argues that the information Officer Crowder had was not sufficient to support reasonable suspicion. Pace cites an oral decision from the bench in this District for the proposition that knowing a person was approaching a house where drug trafficking is ongoing is not sufficient to justify an investigative stop. United States v. Lewis, C.D. Ill. No. 18-20044-

SLD-EIL (Darrow, J.) Transcript of Proceedings on April 9, 2019 (Case No. 18-2044 d/e 23) (Lewis Decision).  The circumstances in Lewis are quite different from this case.  In Lewis, the officers were conducting a consent search of a house where the officers found a large quantity of  drugs. Lewis Decision, at 7-9.  During the search, the defendant Lewis approached the front door of the house.  As Lewis approached the house, two officers immediately subjected Lewis to an investigative stop; one officer stood in front of Lewis and one got behind Lewis.  Judge Darrow found that Lewis was not free to leave at that point, even before the officers had spoken to Lewis.   Lewis Decision, at 9.  Judge Darrow found that at this point when the officers detained him, Lewis was a mere bystander that approached the house; the officers had not talked to Lewis and knew nothing about him.  Judge Darrow said that the officers' theory would justify stopping anyone near the house, even a "Jimmy Johns" sandwich delivery person.   Lewis Decision, at 10-12.  Judge Darrow also found that the officers' testimony about the encounter with the defendant was not credible in some respects.  Lewis Decision, at 3-7.

     In this case,  Officer Crowder did not stop Pace on sight.  Officer Crowder talked to Pace first in a consensual conversation.  Officer Crowder learned that Pace was not just a bystander or sandwich delivery person in

the vicinity of a drug house. Officer Crowder knew that Pace came from out of town specifically to meet Johns and Johnston, two individuals known to the Task Force to be engaged in activity which indicated they were moving methamphetamine. Crowder also knew Johns had prior knowledge concerning methamphetamine distribution. The officers in the Lewis case knew nothing about Lewis when they stopped him. Officer Crowder's testimony also was credible and consistent with the dash camera video. The situation is substantially different from the Lewis case. If turning on the emergency lights was an investigative stop, Officer Crowder had sufficient articulable facts to stop Pace to ask to see his driver's license.

Officer Crowder unsuccessfully tried to call the license information into Dispatch with his portable radio. Officer Crowder then took Pace's driver's license to his vehicle to contact Dispatch. Taking Pace's driver's license back to Officer Crowder's vehicle constituted a stop. Pace could not legally drive the SUV away without his license. A reasonable person under these conditions would have concluded that he could not leave. See United States v. Tyler, 512 F.3d 405, 410 (7th Cir. 2008). Taking the license back to Officer Crowder's vehicle initiated an investigative stop.

Officer Crowder, by this time, had sufficient articulable facts to conduct an investigative stop to run a check on Pace's driver's license and

criminal history.  Officer Crowder took the driver's license because his portable radio did not work.  Officer Crowder knew the facts referred to above before he asked to see Pace's driver's license, and he know knew that Pace was unusually nervous and engaging in strange behavior. Pace's nervousness and unusual behavior, combined with the information that he was going to Johnston's home to meet Johns and Johnston, gave Officer Crowder a reasonable basis to reasonably suspect Pace might be nervous because he was involved in Johns and Johnson's illegal methamphetamine activity.  The additional information was sufficient to justify taking Pace's license back to Officer Crowder's vehicle to contact Dispatch to run a check on Pace's driver's license and criminal history.

Once Dispatch told Officer Crowder that Pace had a criminal history for possession of methamphetamine, possession of a narcotic instrument, and possession of drug paraphernalia and the Judici.com system indicated Pace was on probation for unlawful possession of methamphetamine, Officer Crowder had more than enough information to conduct a free air sniff of Crowder's vehicle for drugs.  The information about Johns and Johnston combined with Pace's criminal record, his statement that he was going to meet Johns and Johnston, and the discovery of a large amount of cash on Pace's person amply supported an investigative stop to conduct a

free air sniff.  See United States v. Finke, 85 F.3d 1275, 1282 (7th Cir.

1996) (Prior drug convictions were a factor to support a finding of

reasonable suspicion); United States v. Rivera, 101 Fed. Appx. 166, 17-71

(7th Cir. 2004) (possession of a large amount of cash was a factor to

support reasonable suspicion of criminal drug activity).  A vehicle may be

detained to conduct a free air sniff for drugs if the officer has reasonable

suspicion based on articulable facts.  see United States v. Guidry, 817 F.3d

997, 1005 (7th Cir. 2016).  Once Officer Crowder's Canine alerted, Officer

Crowder had probable cause to search the SUV.  See  Illinois v. Caballes,

543 U.S. 405, 407 (2005); Guidry, 817 F.3d at 1005.  The search,

therefore, was valid and the Motion should be denied.

Pace argues that he was arrested when Officer Crowder handcuffed

him.  The Court disagrees.  Officer Crowder handcuffed Pace for officer

safety.  Officer Crowder told Pace as much.  Officer Crowder was the only

officer on duty in Pleasant Hill.  He asked a Pike County Deputy Sheriff if

he was available, but the Deputy Sheriff was not.  Officer Crowder had to

take his attention away from Pace to retrieve the Canine from the vehicle

and conduct the free air sniff.  He was at risk when he took his attention

away from Pace.  He did not know if a weapon might be located in Pace's

SUV.  He had observed closed cases for musical instruments in the back of

the SUV. Handcuffing a suspect for officer safety is permissible under these circumstances and does not convert an investigative stop into an arrest. See United States v. Vaccaro, 915 F.3d 431, 436 (7th Cir. 2019). Once the Canine alerted, Officer Crowder had to give his complete attention to searching the SUV. As such, he had an even greater need to handcuff Pace for officer safety. The handcuffing was not an arrest. Pace was arrested after the completion of the search when methamphetamine and cannabis was found in the SUV.

THEREFORE, THIS COURT RECOMMENDS that Defendant's Motion to Suppress Evidence (d/e 16) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: May 8, 2020

_s/ Tom Schanzle-Haskins_
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE