IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cr-30051 |
| | ) | |
| ROGER E. PACE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 30) entered on May 8, 2020, relating to a Motion to Suppress Evidence (d/e 16) filed by Defendant Roger E. Pace. Defendant filed Objections to the Report and Recommendation (d/e 31). The Government did not file a response to the Objection.

In the Report and Recommendation, the Magistrate Judge recommends that this Court deny Defendant's Motion to Suppress Evidence (d/e 16). For the reasons set forth below, the Court OVERRULES Defendant's Objections (d/e 31) and ACCEPTS and

ADOPTS the Magistrate Judge's Report and Recommendation (d/e 30) to deny Defendant's Motion to Suppress (d/e 16).

## I.  BACKGROUND

The Court adopts Judge Schanzle-Hankins' Statement of Facts.  The only evidence provided outside of the parties' briefs was dash camera audiovisual recording and the testimony of Officer Crowder, who was the only witness at the hearing held on March 12, 2020.

To summarize, on April 5, 2019, around 10:30 p.m., a Pleasant Hill Police Officer, Ryan Crowder, was on patrol in an unmarked vehicle in Pleasant Hill, Illinois.  Officer Crowder was a canine officer and had his drug sniffing canine with him on patrol that evening.  Additionally, Officer Crowder's vehicle had an operating dash camera[1].  Officer Crowder was the only officer on duty in Pleasant Hill at the time.

At approximately 10:36 p.m., Officer Crowder observed Defendant Roger E. Pace's white SUV parked in the parking lot of

---

[1] Specific times provided in the Report and Recommendation and this Opinion are based on the dash camera recording, which provided a date and time stamp.

Craig's Heavy Duty Towing Service in Pleasant Hill, which was owned by Pleasant Hill's Police Commissioner, Craig Robinson. Officer Crowder had some suspicion about the SUV because the towing service was closed, Commissioner Robinson had asked officers to watch for individuals loitering in the parking lot, and Officer Crowder did not recognize the lone vehicle in the parking lot.

At 10:36:53 p.m., Officer Crowder pulled up to the driver's side door of the SUV.  Defendant exited the vehicle, walked toward Officer Crowder's vehicle, and asked for directions to Carolina Street.  Officer Crowder asked who Defendant was looking for. Defendant responded that he was going to see Jennifer Johns. Defendant asked again where Carolina Street is, and Officer Crowder said, "It's over there," motioning in the direction of Carolina Street.  See Transcript, d/e 25, pp. 23-24.  Defendant explained he was going to visit Ms. Johns and her mother.

Officer Crowder has known of Jennifer Johns for some time, and the mention of her name raised a red flag with Officer Crowder. Officer Crowder and Jennifer Johns went to the same babysitter as children.  As adults, Officer Crowder had observed Ms. Johns high on methamphetamine.  Ms. Johns gave Officer Crowder information

about methamphetamine use in Pleasant Hill, which led to an arrest of a person for possession of methamphetamine.  Officer Crowder was also told by the West Central Illinois Task Force that a confidential source reported that Ms. Johns and her mother, Ms. Johnston, were using and moving methamphetamine.  Additionally, the Pleasant Hill Police Department had received complaints from Ms. Johnston's neighbors about frequent traffic at Ms. Johnston's home on Carolina Street, which was consistent with drug trafficking.  Therefore, Officer Crowder was concerned when Defendant stated he planned to visit Ms. Johns and Ms. Johnston, individuals known to be involved in methamphetamine drug activity, in the late evening.

After Officer Crowder and Defendant's initial conversation, Officer Crowder backed up his vehicle and parked directly behind Defendant's vehicle.  At 10:37:49 p.m., Officer Crowder turned on his flashing emergency lights.  At that time, Defendant stood outside of his SUV talking on a cell phone.  Officer Crowder typically turned on his emergency lights when he parked and interacted with someone he did not know.  Moreover, Officer Crowder was the only officer on duty that night and did not know

whether Defendant was armed.  Officer Crowder turned on his lights so that if a unit from another agency needed to respond to his location, he would be easier to find.  At this time, Officer Crowder had not told Defendant he could not leave, and he did not display a weapon.  Officer Crowder's conversation with Defendant was cordial, and Officer Crowder did not shout or make threats at Defendant.  Officer Crowder testified that if Defendant had left the scene, Officer Crowder would not have stopped him.

At 10:38:30 p.m., Officer Crowder exited his vehicle and walked up to Defendant, who was still standing outside of the SUV. Officer Crowder asked for Defendant's driver's license, which Defendant retrieved from his vehicle.  Officer Crowder also shined a flashlight into the interior of the SUV looking for weapons or contraband.  Officer Crowder saw several cases for guitars and other musical instruments, but he did not see any weapons or contraband.  Defendant stated that the cases contained musical instruments.

At approximately 10:39:04 p.m., Officer Crowder called Dispatch to check the license plate number of the SUV.  Around 10:39:30 p.m., Defendant handed Officer Crowder his license.

Officer Crowder attempted several times to use his portable radio to call Defendant's license number into Dispatch to check whether the license was valid and whether any outstanding warrants existed, but he was unsuccessful. His portable radio often did not work in that part of town.

At approximately 10:40:20 p.m., Officer Crowder was standing outside of the SUV. Defendant walked to the back of the SUV and tried opening the back window of the SUV. Defendant said he wanted to get an instrument out of the back to play it for Officer Crowder. Officer Crowder moved to the back of the SUV. At 10:40:26 p.m., Defendant removed an instrument case from the rear of the SUV. Officer Crowder told Defendant he believed Defendant could play well, but he asked Defendant to leave the case in the SUV. Officer Crowder made that request for officer safety because he did not know what was in the instrument case. Officer Crowder found Defendant's overly friendly manner unusual and observed that Defendant was more nervous than people with whom Officer Crowder typically interacted.

By 10:40:50 p.m., Defendant returned to the driver's seat in his SUV. Defendant remained seated and left his door open. Officer Crowder sat in his vehicle with the door shut.

At approximately 10:42:27 p.m., Officer Crowder contacted Dispatch to ask for a run on Defendant's license number and criminal history. At 10:44:00 p.m., Dispatch provided Officer Crowder with information on the SUV's license plate, stating that the license plate was valid. Dispatch did not provide any suspicious information regarding the SUV license plate. At approximately 10:44:30 p.m., Defendant shut the driver's car door on his SUV.

At approximately 10:45:15 p.m., Officer Crowder spoke to a Pike County deputy sheriff to see whether the deputy sheriff would come to the scene. Officer Crowder stated that he was on a stop with a man from Grafton, Illinois, who was in the area to see Jennifer Johns. Officer Crowder also said he was waiting for information to come back, and he intended to ask Defendant for consent to search the SUV. Officer Crowder asked the deputy sheriff if he was in the vicinity to "come and have some fun, but if

not no big deal." <u>See</u> Transcript, d/e 25, p. 65.  The deputy sheriff declined as he was busy on a call.

At approximately 10:46:00 p.m., Dispatch told Officer Crowder that Defendant had a criminal history that included possession of methamphetamine, possession of narcotic instrument, and possession of drug paraphernalia.  Defendant had no outstanding warrants.  Officer Crowder also used his in-car computer to search for Defendant on the Judici.com website.  Judici noted that Defendant was on probation for unlawful possession of methamphetamine.  However, the Judici website had a disclaimer that stated, "We don't warrant any accuracy for our statements." <u>See</u> Transcript, d/e 25, p. 64.

At 10:46:40 p.m., Officer Crowder exited his vehicle, walked up to the driver's side door of the SUV, opened the SUV door, and Defendant exited.  Defendant was smoking a cigarette.  Based on the video, Officer Crowder and Defendant appeared to talk in a normal fashion.  While talking, Officer Crowder observed a large bulge in Defendant's front pocket, which was $800 in cash[2].

---

[2] Why the $800 was disclosed at the time is unknown. The testimony was unclear as to whether Officer Crowder noticed the bulge during the pat down for weapons or not.

Defendant removed the cash from his flannel jacket. Officer

Crowder asked Defendant if he could check Defendant for a

weapon, and Defendant consented. At approximately 10:47:53

p.m., Officer Crowder patted Defendant down. At 10:48:07 p.m.,

Officer Crowder had Defendant walk to the area in front of Officer

Crowder's vehicle. Again, at 10:49:35 p.m., Officer Crowder had

Defendant walk closer to the front of Officer Crowder's vehicle.

Officer Crowder had Defendant take off his jacket. Officer Crowder

checked Defendant's jacket and removed the cash out of the jacket

pocket, then returned the money to the pocket. Officer Crowder

asked Defendant to pull up his shirt and shake out his waistband

to establish Defendant had no weapons. While the search was

conducted, Defendant was smoking a cigarette, and the two

continued to talk in a normal manner.

Around 10:52:00 p.m., Officer Crowder asked for consent to

search Defendant's vehicle, which Defendant declined. Officer

Crowder told Defendant that he was going to conduct a free air sniff

with his canine. At 10:52:15 p.m., Officer Crowder reached for his

handcuffs. Officer Crowder told Defendant that he was going to

handcuff Defendant for officer safety while he conducted the free air

sniff.  At approximately 10:52:44 p.m., Officer Crowder handcuffed Defendant with Defendant's hands in front of his body and draped Defendant's jacket over Defendant's shoulders.  Defendant sat on the front of Officer Crowder's vehicle facing the SUV.  Defendant told Officer Crowder that cannabis had been in the car the day before.

At 10:54:03 p.m., Officer Crowder walked his canine over to the SUV.  At 10:54:44 p.m., approximately 18 to 19 minutes after the initial encounter began, the canine alerted on Defendant's vehicle.  At 10:55:04 p.m., Officer Crowder retuned the canine to his vehicle.  Officer Crowder told Defendant he was going to search the SUV.  At 10:56:05 p.m., Officer Crowder began searching the SUV.  Officer Crowder found cannabis and methamphetamine in Defendant's vehicle.  Defendant was then arrested.

On September 4, 2019, Defendant was indicted by a grand jury for knowingly and intentionally possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  See Indictment, d/e 1.  Defendant filed a motion to suppress evidence

(d/e 16), and the motion was referred to United States Magistrate Judge Tom Schanzle-Haskins for consideration.  The Government filed a response opposing the motion.  <u>See</u> Response, d/e 19.  On March 12, 2020, a hearing on the motion to suppress was held in front of Magistrate Judge Schanzle-Haskins.

In the Report and Recommendation, Magistrate Judge Schanzle-Haskins recommends that this Court deny Defendant's motion to suppress.  <u>See</u> Report and Recommendation, d/e 30. After consideration of the arguments presented, Magistrate Judge Schanzle-Haskins concluded that the initial encounter between Officer Crowder and Defendant was consensual.  Magistrate Judge Schanzle-Haskins also found that Officer Crowder was a credible witness.

Additionally, Magistrate Judge Schanzle-Haskins concluded that Office Crowder did not seize Defendant when he turned on his emergency lights.  Regardless, Magistrate Judge Schanzle-Haskins found that Officer Crowder had reasonable articulable suspicion to conduct a limited investigatory stop to check Defendant's driver's license.

Further, Magistrate Judge Schanzle-Haskins concluded that Officer Crowder had sufficient information to conduct a free air sniff of Defendant's vehicle and the search was valid.  Lastly, Magistrate Judge Schanzle-Haskins determined that Defendant was not arrested when Officer Crowder handcuffed Defendant to conduct the free air sniff, which led to a search of the vehicle.

On May 22, 2020, Defendant filed his Objection to the Magistrate's Report and Recommendation.  See Objection, d/e 31. Defendant raised many of the same arguments as he did in his Motion to Suppress.  See d/e 16.  Specifically, Defendant objects to Magistrate Judge Schanzle-Haskins' finding that Defendant's encounter with Officer Crowder was consensual, Officer Crowder's testimony was credible, activation of the emergency lights was not a seizure, Officer Crowder had reasonable suspicion when he activated his emergency lights, and Defendant was not placed under arrest when he was handcuffed.

## II.  ANALYSIS

This Court must review de novo those portions of the Report and Recommendation to which timely objections are made.  Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1).  This Court may "accept,

reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate with instructions." Fed. R. Crim. P. 59(b)(3). After reviewing the Report and Recommendation, the Court overrules the Defendant's Objections and adopts Magistrate Judge Schanzle-Haskins' Report and Recommendation.

### A.  Officer Crowder's Testimony Was Credible.

Defendant objects to Magistrate Judge Schanzle-Haskins' finding that Officer Crowder's testimony was credible. The Magistrate Judge held an evidentiary hearing on March 12, 2020, and heard live testimony from Officer Crowder. Officer Crowder testified that he turned on his emergency lights for officer safety and that he did not know whether Defendant had weapons on him. If something happened, Officer Crowder believed having his lights on would lead other officers to find him. In Defendant's memorandum filed after the evidentiary hearing, Defendant argued that Officer Crowder's testimony was not credible. The Magistrate Judge disagreed and found Officer Crowder credible. See Report and Recommendation, d/e 30, p. 16.

Defendant again objects, arguing that the Magistrate Judge erred in finding Officer Crowder credible. Defendant contends that

statements made by Officer Crowder at the hearing appear conflicting.  However, the statements are not conflicting.  Defendant points to Officer Crowder's testimony that he would not have pursued Defendant after his emergency lights were activated, "yet admitted later on that he has never let someone drive away without pursuing them after he activated his emergency lights."  <u>See</u> Objection, d/e 31, p. 3.  The Magistrate Judge did not find those statements contradictory, and neither does this Court.  The Court has reviewed the entire record and determined that the record supports Magistrate Judge Schanzle-Haskins' credibility finding.

## B. Defendant's Initial Encounter with Officer Crowder Was Consensual.

Defendant also argues that the Magistrate Judge incorrectly found that Defendant's initial encounter with Officer Crowder was consensual.  More specifically, Defendant contends that the Magistrate Judge erred in relying on the factors articulated in <u>United States v. Holly</u>, 940 F.3d 995, 1000 (7th Cir. 2019) because the "hallmark of a consensual encounter is whether the defendant felt free to leave."  <u>See</u> Objection, d/e 31, p. 1.  Defendant argues he was not free to leave.

In <u>Holly</u>, the court began its analysis by stating:

> A seizure within the meaning of the Fourth Amendment takes place if, under the circumstances, a reasonable person would not feel free to leave. A consensual encounter, on the other hand, takes place if a reasonable person would feel free to ignore the police and go about his business.

940 F.3d at 1000 (internal citation omitted). In this case, the Magistrate Judge noted that an interaction is consensual if "the individual reasonably would 'feel free to ignore the police and go about his business.'" <u>See</u> d/e 30, p. 13 (citing <u>Holly</u>, 940 F.3d at 1000).

Courts should consider several factors when determining whether an encounter is consensual:

- where the interaction took place, including whether it was in public;

- how many police officers were present;

- the extent to which the police presence was threatening;

- whether the officers made any show of weapons or physical force;

- the officers' language and tone;

- whether the police suggested the defendant was suspected of crime; and

• whether officers told the defendant he was free to leave.

Holly, 940 F.3d at 1000.

Similar to Holly, the facts of this case present a consensual
encounter.  The encounter between Officer Crowder and Defendant
took place outside.  Officer Crowder did not force Defendant to stop
his vehicle because the vehicle was already parked.  Only one
officer, Officer Crowder, was present.  Based on the testimony and
evidence presented, no threats were made by Officer Crowder to
Defendant and Officer Crowder's presence was peaceful.  No
evidence exists that Officer Crowder showed his weapon or used
physical force or that Officer Crowder suggested Defendant was
suspected of a crime.  While Officer Crowder may not have explicitly
told Defendant he was free to leave, Defendant moved about freely.
Not one factor is dispositive as the factors "'are neither exhaustive
nor exclusive.'"  Holly, 940 F.3d at 1000 (quoting United States v.
Smith, 794 F.3d 681, 684 (7th Cir. 2015)); see also United States v.
Mendenhall, 446 U.S. 544, 554 (1980).

Once Officer Crowder moved his vehicle behind Defendant's
vehicle and turned on his activated his emergency lights, Officer
Crowder had reasonable suspicion to conduct a limited

investigatory stop, which the Court analyzes in detail below.    The
Court finds that the Magistrate Judge did not err in relying on the
Holly factors or in the finding that the Defendant's initial encounter
with Officer Crowder was consensual because the initial encounter
was in fact consensual.

### C.  Officer Crowder Had Reasonable Suspicion to Conduct a Limited Investigatory Stop.

Defendant argues that Officer Crowder lacked reasonable
suspicion when he activated his emergency lights and when he took
Defendant's license.  According to Defendant, both constituted a
seizure.  The Court overrules Defendant's objection because Officer
Crowder had reasonable suspicion to make a limited investigatory
stop to check Defendant's license.

Pursuant to the Fourth Amendment, a person has the right to
be free from unreasonable searches and seizures.  U.S. CONST.
amend. IV.  "However, a brief, investigatory stop that demands only
a limited intrusion into an individual's privacy is permitted under
the Constitution when it is based upon 'specific and articulable
facts which, taken together with rational inferences from those facts
reasonably warrant that intrusion.'" United States v. Baskin, 401

F.3d 788, 791 (7th Cir. 2005) (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968)).  "Reasonable suspicion amounts to something less than probable cause but more than a hunch." <u>Id.</u>  The decision to stop must be "reasonably related in scope to the circumstances known to the officer at the time of the stop." <u>Id.</u>

As the Magistrate Judge noted, Defendant was from out of town and needed directions to Carolina Street to see Ms. Johns and Ms. Johnston.  Officer Crowder knew that Ms. Johns was involved with methamphetamine.  On one occasion, Officer Crowder saw Ms. Johns high on methamphetamine.  Ms. Johns provided information that led to the arrest of an individual for possession of methamphetamine.  Defendant Crowder had information from the West Central Illinois Task Force that Ms. Johns and Ms. Johnston were using and moving methamphetamine.  Defendant mentioned that he was visiting both individuals.   The Magistrate Judge found that this information was enough information for Officer Crowder to make a limited investigatory stop to check Defendant's identification.  This Court agrees with the Magistrate Judge's finding.   Officer Crowder had reasonable suspicion to conduct a

limited investigatory stop for purposes of checking Defendant's license.

Defendant argues now, and did so before the Magistrate Judge, that Officer Crowder did not have information to believe Ms. Johns and Ms. Johnston were involved with methamphetamine. The Magistrate Judge disagrees, and so does this Court for the reasons articulated above. Officer Crowder had sufficient evidence to believe that Ms. Johns and Ms. Johnston were involved with methamphetamine.

The Court also finds that Officer Crowder had reasonable suspicion to take Defendant's license back to Officer Crowder's vehicle, which also constituted as an investigatory stop. The Magistrate Judge found that Officer Crowder had reasonable suspicion for the stop based on the previously mentioned information obtained from the initial conversation and Officer Crowder's interaction with Defendant immediately prior to taking the license to Officer Crowder's vehicle. Prior to taking the license back to the police vehicle, Officer Crowder asked to see Defendant's license. Officer Crowder was having difficulties contacting Dispatch from his portable radio. While this was occurring, Defendant

reached for a musical instrument from the back of his SUV to play for Officer Crowder.  Officer Crowder thought Defendant was acting unusually friendly and unusually nervous.

Defendant argues that the officer had no way of knowing this was unusual behavior and that the Magistrate Judge should not have relied on this interaction to support a finding of reasonable suspicion.  Moreover, the Court finds Defendant's characterization that the Magistrate Judge "relies heavily on Mr. Pace's behavior" inaccurate.  See Objection, d/e 31, p. 11.  The Magistrate Judge considered this evidence when deciding whether Officer Crowder had reasonable suspicion to conduct the free air sniff.  See Report and Recommendation, d/e 30, pp. 24-25.  The Magistrate Judge articulated facts sufficient to support the free air sniff, which can be supported by additional evidence.  See Baskin, 401 F.3d at 792 ("In assessing whether an investigatory stop was reasonable, we must consider the totality of the circumstances known to the officer at the time of the stop."); United States v. Lewis, 920 F.3d 483, 489 (7th Cir. 2019) ("Probable cause is an objective standard, based on the totality of the circumstances.").  Based on a review of the evidence and the totality of the circumstances, the Court finds that

Officer Crowder had reasonable suspicion to conduct an investigatory stop – when Officer Crowder activated his emergency lights and when he took Defendant's license back to the police vehicle.  Even disregarding Defendant's unusual behavior, Officer Crowder had reasonable suspicion to conduct a limited investigatory stop based on the initial encounter.

Moreover, the Magistrate Judge correctly found that United States v. Lewis, C.D. Ill. No. 18-20044-SLD-EIL (Darrow, J.) is distinguishable.  See d/e 30, pp. 21-23.  Most notably, the court in Lewis found that the defendant was immediately subjected to an investigatory stop by police officers when the defendant approached a house where officers were conducting a consent to search of a house.  Prior to approaching and conducting a stop of the defendant, the police officers had not talked to the defendant and knew nothing about him.  Yet, once the officers approached, the defendant was not free to leave.  The court found that at the time of the stop, the defendant was merely a bystander who had approached the house.

**D.  Defendant Was Not Placed under Arrest When He Was Handcuffed.**

Defendant objects to the Magistrate Judge's finding that Defendant was not placed under arrest when he was handcuffed. Defendant argues that the evidence shows Officer Crowder was not threatened by Defendant, and therefore, Officer Crowder handcuffed Defendant only to place him under arrest without probable cause.

Officer Crowder testified that he handcuffed Defendant for officer safety, which Officer Crowder told Defendant during the encounter.  Officer Crowder had to take his attention away from Defendant while he retrieved his canine and conducted the free air sniff and the search of the vehicle, which placed Officer Crowder at risk.  A concern existed that Defendant could access the vehicle and obtain a weapon without Officer Crowder knowing.

The Seventh Circuit has held that there are "a limited set of circumstances in which handcuffs are appropriate without converting a Terry stop into a full arrest[, and thus requiring probable cause], and chief among them is officer safety and the possibility of the presence of a weapon." United States v. Vaccaro, 915 F.3d 431, 436 (7th Cir. 2019).  The use of handcuffs on

suspects during an investigatory stop has been found permissible.

See United States v. Smith, 697 F.3d 625, 632 (7th Cir. 2012)

("[O]fficers conducting an investigatory stop may approach with

guns drawn and may handcuff a suspect without transforming an

investigatory stop into an arrest."); United States v. Tilmon, 19 F.3d

1221, 1228 (7th Cir. 1994) ("Neither does handcuffing in all

circumstances transform a stop into an arrest.  In fact,

handcuffing—once highly problematic—is becoming quite

acceptable in the context of a Terry analysis.").

Based on a review of the facts and evidence, the Court finds

that Defendant was not placed under arrest when he was

handcuffed for the search.

### III. CONCLUSION

For the reasons stated, the Objection (d/e 31) is OVERRULED.

The Court ACCEPTS and ADOPTS the Report and Recommendation

(d/e 30).  The Motion to Suppress Evidence (d/e 16) is DENIED.

**ENTERED: January 27, 2021**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**